IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUISA ANNETTE ALVAREZ-FELIX in
representation of Joan Alberto
Zorrilla-Lora.

      **Petitioners**

        v.

**REBECCA GONZÁLEZ RAMOS,** Special Agent
in Charge of Homeland Security
Investigations in San Juan, **GARRET J.
RIPA** is Miami Field Office Director
for U.S. Immigration and Customs
Enforcement, overseen Puerto Rico's
Immigration and Removal Operations,
ICE Office in GSA Guaynabo Detention
Facility; **TODD LYONS** in his official
capacity, Acting Director for U.S.
Immigration and Customs Enforcement;
**KRISTI NOEM,** Secretary of Homeland
Security; **PAMELA BONDI,** United States
Attorney General; **W. STEPHEN MULDROW**,
US District Attorney for the District
of Puerto Rico; **ROBERTO VAQUERO**
Director of Field Operations Customs
and Border Protection; *all in their
official capacities*.

      **Respondents**

**CIVIL NO.** 26-1041 (RAM)

## OPINION AND ORDER

Pending before the Court is Petitioner Joan Alberto Zorrilla-Lora's ("Petitioner" or "Mr. Zorrilla-Lora") *Petition for Writ of Habeas Corpus* (the "*Petition*"). (Docket No. 1). Neither party nor the Court are writing on a blank slate. The statutory construction question that is at the crux of this case has been the subject of

myriad lawsuits throughout the nation and dutiful judges have reached divergent answers.[1] Having parsed through the statutes, the parties' submissions, and the authorities cited therein, the Court finds that the mandatory detention provision of 8 U.S.C. § 1225 applies and hereby **DENIES** the *Petition*.

## I.    FACTUAL BACKGROUND[2]

Mr. Zorrilla-Lora is a national and citizen of the Dominican Republic who entered Puerto Rico on approximately October 13, 2021 without undergoing proper admission procedures. (Docket No. 1 at 4). On August 20, 2022, he married Luisa Anette Alvarez-Feliz, a United States citizen. Id. at 5. The United States Citizenship and Immigration Service ("USCIS") approved his Petition for Alien Relative (1-130) on September 13, 2024. Id. at 6. On June 12, 2025, USCIS received his application for Provisional Unlawful Presence Waiver (I-601A) and payment of the filing fee, as evinced by receipt number YSC2590037159. Id. Petitioner's I-601A waiver is currently pending adjudication. Id.

---

[1] For example, the following cases found that detention is discretionary in analogous cases: Gomes v. Hyde, 804 F. Supp. 3d 265, 278 (D. Mass. 2025); Armando Becerra Vargas v. Bondi, SA-25-cv-1023, 2025 WL 3300446 (W.D. Tex. Nov. 12, 2025); Guerrero Orellana v. Moniz, No. 25-CV-12664-PBS, 2025 WL 3033769 (D. Mass. Oct. 30, 2025). By contrast, these cases determined that mandatory detention is proper for petitioners with similar circumstances: Ramirez Melgar v. Bondi, No. 8:25CV555, 2025 WL 3496721 (D. Neb. Dec. 5, 2025); Rojas v. Olson, No. 25-CV-1437-BHL, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025); Alonzo v. Noem, No. 1:25-CV-01519 WBS SCR, 2025 WL 3208284 (E.D. Cal. Nov. 17, 2025).

[2] The factual statements in this section are taken from the allegations set forth in the *Petition* and the exhibits attached thereto.

On January 8, 2026, Petitioner was stopped by Carolina Municipal Police Officer Bahamundi Requena ("Officer Bahamundi") for alleged violations of Municipal Ordinance 17 Series 2022-2023-03. Id. at 2. Petitioner's Puerto Rico Driver's License, which he provided to Officer Bahamundi, contains a distinctive purple bar reserved for noncitizens. Id. Officer Bahamundi cited Petitioner to appear at the Carolina Municipal Police Station on January 15, 2026. Id. Petitioner was detained by United States Border Patrol agents ("BP Agents") at the Carolina Municipal Police Station on January 15, 2026. Id. at 2-3.

On January 16, 2026, Petitioner received a Notice to Appear from the Department of Homeland Security stating that Petitioner is subject to removal from the United States pursuant to the following provision of law: "212(a)(6)(A)(I) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (Docket No. 1-7 at 1). On January 21, 2026, the Immigration Judge overseeing Petitioner's case issued an Order providing that his request for a custody redetermination pursuant to 8 C.F.R. § 1236 was denied "because the Court does not have jurisdiction. Pursuant to Matter of YAJURE HURTADO, 29 I. & N. Dec. 216 (BIA 2025), respondent is an application for admission and therefore is not eligible for bond."

(Docket No. 1-11 at 1). Petitioner reserved the right to appeal this determination. Id. at 2. Petitioner is currently in the physical custody of Respondents at the Aguadilla Processing Center. (Docket No. 1 at 2-3).

## II.  PROCEDURAL BACKGROUND

Mr. Zorrilla-Lora filed his *Petition* on January 23, 2026. Id. Therein he contends that per the terms of the Immigration and Nationality Act, 8 U.S.C. §§ 1101, et seq, (the "INA") he should not be subject to the mandatory detention provision of 8 U.S.C. § 1225 but rather he is entitled to a bond hearing pursuant to 8 U.S.C. § 1226. Id. at 6. Moreover, he asserts that he is protected by a recently certified class in the case Maldonado Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025), judgment entered sub nom. Maldonado Bautista v. Noem, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). Id. Petitioner also claims that his Fifth Amendment rights to due process, access to legal counsel, and adequate conditions of confinement are being violated and that Respondents' decision to detain him constitutes a violation of the Administrative Procedure Act ("APA"). Id. at 11-14. Accordingly, Mr. Zorrilla-Lora asks that this Court issue a writ of habeas corpus ordering Respondents to immediately release Petitioner from their custody, or, in the alternative, order Petitioner be released

upon the posting of a reasonable bond or conditions of supervision. Id. at 14.

Respondents filed their *Memorandum in Opposition to Petitioner's Petition for Writ of Habeas Corpus* ("*Opposition*") on January 30, 2026. (Docket No. 21). Respondents first argue the Court lacks jurisdiction to review Petitioner's detention pending removal pursuant to 8 U.S.C. §§ 1252(b)(9); 1252(g); and 1252(e)(3). Id. at 17-20. Second, Respondents assert that Petitioner's detention is not unconstitutional and that he is properly detained under the applicable section of the INA, namely 8 U.S.C. § 1225. Id. at 20-27. Moreover, because the INA establishes the due process afforded to aliens, nothing other than compliance with said statute is required to comply with the Fifth Amendment. Id. Respondents contest Petitioner's claim that he is a member of the Maldonado Bautista class. Id. at 31. The *Opposition* also maintains that Petitioner's allegations regarding access to counsel and the conditions of detention center lack specificity that warrants relief and that Petitioner has not exhausted administrative remedies. Id. at 6, 37-38.

On February 4, 2026, Petitioner filed his *Response* to Respondents' *Opposition*. (Docket No. 25). Therein, Petitioner asserts that there are no jurisdictional hurdles precluding the Court from reviewing his petition. Id. at 16-18. He reiterates that he is a member of the Maldonado Bautista class and that his

detention should be discretionary pursuant to 8 U.S.C. § 1226 because he is not an "applicant for admission" under the INA. Id. at 2-5, 12. Therefore, Petitioner concludes that his continued detention in the absence of a bond hearing violates due process protections. Id. at 5.

Respondents filed a *Surreply in Opposition* on February 6, 2026. (Docket No. 26).

### III. APPLICABLE LAW

#### A. Habeas Corpus

Pursuant to 28 U.S.C. § 2241(c)(3), writ of habeas corpus may issue to individuals "in custody in violation of the Constitution or laws or treaties of the United States." The Supreme Court has recognized that, under § 2241(c)(3), district courts possess jurisdiction to consider habeas challenges to the legality of the detention of noncitizens. *See* Rasul v. Bush, 542 U.S. 466, 483–84 (2004) ("Petitioners contend that they are being held in federal custody in violation of the laws of the United States...Section 2241, by its terms, requires nothing more."). The First Circuit has held that under § 2241, "[t]he burden of proof of showing deprivation of rights leading to unlawful detention is on the petitioner." Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009) (collecting cases).

**B. Relevant Detention Provisions of the INA**

The INA governs the admission, inspection, apprehension, and removal of noncitizens within the United States, among other aspects of immigration. The present case concerns two INA provisions regarding detention, namely Sections 1225 and 1226.

**i. Section 1225**

Section 1225 specifies when certain noncitizens, namely "applicants for admission," are subject to mandatory detention. Pursuant to this section, an "applicant for admission" is defined as "[a]n **alien present** in the United States who has **not been admitted** or who **arrives in the United States** (**whether or not at a designated port of arrival**[)]." 8 U.S.C. § 1225(a)(1) (emphasis added). In its relevant part, Section 1225 provides that if the examining immigration officer inspecting an applicant for admission "determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien **shall be detained** for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A).

Section 1225(a)(1) was added in 1996 when Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act (the "IIRIRA"), thereby "substantially amend[ing]" the INA. *See* Nken v. Holder, 556 U.S. 418, 423 (2009); Torres v. Barr, 976 F.3d 918, 927 (9th Cir. 2020). Before the passage of the IIRIRA, "non-citizens who had entered without inspection could take advantage

of the greater procedural and substantive rights afforded in deportation proceedings, while non-citizens who presented themselves at a port of entry for inspection were subjected to more summary exclusion proceedings." Hing Sum v. Holder, 602 F.3d 1092, 1100 (9th Cir. 2010). The IIRIRA "addressed this anomaly by substituting 'admission' for 'entry' and by replacing deportation and exclusion proceedings with a general 'removal' proceeding. Under the new regime, 'admission' now determines whether a non-citizen is subject to grounds of deportability or inadmissibility within the context of a removal proceeding." Id., see also Torres, 976 F.3d at 928 (noting that Section 1225(a)(1) "ensures that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing in removal proceedings under the INA—in the position of an 'applicant for admission.'").

### ii. Section 1226

For its part, Section 1226(a) governs the detention of "aliens," defined by the INA as "any person not a citizen or national of the United States." See 8 U.S.C. §§ 1101; 1226. Specifically, this section provides that "[o]n a warrant issued by the Attorney General, an alien **may be arrested and detained** pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). While the decision regarding removal is pending, the Attorney General **may continue to**

**detain the arrested alien or release the alien on bond or conditional parole**. Id. In other words, "[u]nlike § 1225(b), § 1226(a)(2)(A) permits, but does not require, the Attorney General to release detained aliens on 'bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General.'" Buenrostro-Mendez v. Bondi, No. 25-20496, 2026 WL 323330, at *2 (5th Cir. 2026) (citing 8 C.F.R. §§ 236.1(c)(8), 236.1(d), 1236.1(d)(1), 1003.19).

Notably, Section 1226(c) deems certain aliens ineligible for bond, namely those that have committed specific offenses listed at Section 1226(c)(1)(E)(i)-(ii).[3] See also Chavez v. Noem, 801 F. Supp. 3d 1133, 1141 (S.D. Cal. 2025) ("Section 1226(c) simply removed the Attorney General's detention discretion for aliens charged with specific—but not all—crimes. The Attorney General may still exercise her detention discretion under § 1226(a) for any other aliens falling under that subsection who are not charged with the specific crimes carved out by § 1226(c)").

## IV. DISCUSSION

### A. Jurisdiction

Respondents allege that the Court lacks subject matter jurisdiction over Petitioner's claim pursuant to the following

---

[3] Section 1226(c) was recently amended by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), "to expand the category of covered crimes, and to require the detention not only of those who have been convicted of any of the newly added crimes but also of anyone who has been accused of one." Black v. Almodovar, 156 F.4th 171, 181 (2d Cir. 2025)(Nardini, J., Dissenting).

sections of the INA: 8 U.S.C. § 1252(b)(9); 8 U.S.C. § 1252(g); and 8 U.S.C. § 1252(e)(3). The Court finds that none of the three statutes divests this Court of jurisdiction.

### i. Section 1252(b)(9)

Under 8 U.S.C. § 1252(b)(9):

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

Respondents maintain that Petitioner's challenge arises from removal proceedings and thus cannot be reviewed by the Court in the absence of a final order. (Docket No. 21 at 17). In Jennings v. Rodriguez, the Supreme Court rejected a similar contention, finding that Section 1252(b)(9) does not bar courts from reviewing claims regarding whether "certain statutory provisions require detention without a bond hearing." Jennings v. Rodriguez, 583 U.S. 281, 292 (2018). Section 1252(b)(9) "does not present a jurisdictional bar" where, as here and in Jennings, the petitioner is "not asking for review of an order of removal; not challenging the decision to detain them in the first place or to seek removal; and not even challenging any part of the process by which their removability will be determined." Id. at 294-295 (cleaned up). *See also* Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of

Homeland Sec., 510 F.3d 1, 10 (1st Cir. 2007) ("With respect to section 1252(b)(9), th[e] words ['arising from'] cannot be read to swallow all claims that might somehow touch upon, or be traced to, the government's efforts to remove an alien.").

### ii.  Section 1252(g)

8 U.S.C. § 1252(g) establishes that:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Respondents assert that the Secretary of Homeland Security's decision to commence removal proceedings, including the decision to detain an alien pending said removal proceedings, falls squarely within Section 1252(g)'s jurisdictional bar. (Docket No. 21 at 17). However, the Supreme Court has clarified that Section 1252(g)'s prohibition "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999). In Reno, the Supreme Court reasoned "[i]t is implausible that the [statute's] mention of three discrete events

along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." Id. (emphasis added); *see also* Kong v. United States, 62 F.4th 608, 617 (1st Cir. 2023) (concluding, in accordance with Reno, that Section 1252(g) does not bar judicial review of challenges to the lawfulness of detention).

### iii. Section 1252(e)(3)

8 U.S.C. 1252(e)(3), titled "challenges on validity of the system," specifies that "[j]udicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia" and limits challenges to the constitutionality or lawfulness of Section 1225(b), its implementing regulations and/or related policies or procedures. *See also* Castro v. United States Dep't of Homeland Sec., 835 F.3d 422, 427 (3d Cir. 2016). However, rather than challenging the validity or constitutionality of Section 1225(b), Petitioner asserts in the case at bar that it is Section 1226, not Section 1225, that governs his detention. Accordingly, Section 1252(e)(3) is inapplicable and does not deprive the Court of jurisdiction.

### B. Exhaustion

Respondents claim that Petitioner has not exhausted available administrative remedies. (Docket No. 21 at 37). "There are two species of exhaustion: statutory and common-law. The former

deprives a federal court of jurisdiction, while the latter cedes
discretion to a federal court to decline the exercise of
jurisdiction." Brito v. Garland, 22 F.4th 240, 255 (1st Cir. 2021)
(cleaned up) (internal citations and quotations omitted). Courts
have routinely found that common-law prudential exhaustion
requirements extend to habeas petitions in immigration cases,
absent a relevant statutory requirement. *See* Kaweesa v. Ashcroft,
345 F. Supp. 2d 79, 97 (D. Mass. 2004) (collecting cases).

For his part, Petitioner alleges that exhaustion is futile
with regards to his detention claim in light of Matter of YAJURE
HURTADO, 29 I. & N. 216 (BIA 2025). (Docket No. 25 at 8). In Matter
of YAJURE HURTADO, the Board of Immigration Appeals ("BIA") issued
a precedential decision concluding that noncitizens "who
surreptitiously cross into the United States remain applicants for
admission until and unless they are lawfully inspected and admitted
by an immigration officer" and are thus subject to the mandatory
detention provision of Section 1225. Matter of Yajure Hurtado, 29
I. & N. Dec. 216, 228 (BIA 2025).

The First Circuit has recognized that courts may waive an
exhaustion requirement (even one imposed by statute), "where a
resort to the agency would be futile because the challenge is one
that the agency has no power to resolve in the applicant's favor."
Sousa v. I.N.S., 226 F.3d 28, 32 (1st Cir. 2000). The Court agrees
that exhaustion with regards to Petitioner's bond claim would be

futile, and thus should be waived, given that <u>Matter of YAJURE HURTADO</u> is binding precedent for immigration judges.

However, as to Petitioner's access-to-counsel and conditions-of-confinement claims, Petitioners do not allege, and the record does not reflect, that any attempts were made to exhaust administrative remedies prior to filing the present *Petition* nor that doing so would be futile. Crucially, First Circuit precedent expressly requires exhaustion of administrative remedies for analogous access-to-counsel claims. *See* <u>Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.</u>, 510 F.3d 1, 12-14 (1st Cir. 2007). Accordingly, the Court hereby **DENIES** Petitioner's access-to-counsel and conditions-of-confinement claims **WITHOUT PREJUDICE**, for failure to exhaust administrative remedies.

### C. <u>Maldonado Bautista</u>

In <u>Maldonado Bautista</u>, the District Court for the Central District of California determined that Section 1225's definition of "applicants for admission" does not include noncitizens already in the United States that have not been inspected and authorized by an immigration officer. <u>Maldonado Bautista</u>, 2025 WL 3713987 at *10. Accordingly, it concluded that said individuals are not subject to the mandatory detention required by Section 1225 but rather are eligible for bond under Section 1226. <u>Id.</u> The <u>Maldonado Bautista</u> Court proceeded to certify a class action granting

declaratory relief to this effect. Id. at *29. The certified class
was defined as follows:

>   Bond Eligible Class: All noncitizens in the
>   United States without lawful status who (1)
>   have entered or will enter the United States
>   without inspection; (2) were not or will not
>   be apprehended upon arrival; and (3) are not
>   or will not be subject to detention under 8
>   U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at
>   the time the Department of Homeland Security
>   makes an initial custody determination.

Id. at *32. The Maldonado Bautista Court subsequently issued
final judgment declaring that "Bond Eligible Class members are
detained under 8 U.S.C. § 1226(a), are not subject to mandatory
detention under § 1225(b)(2), and are entitled to consideration
for release on bond by immigration officers and, if not released,
a custody redetermination hearing before an immigration judge" and
vacating "the Department of Homeland Security policy described in
the July 8, 2025, 'Interim Guidance Regarding Detention Authority
for Applicants for Admission' under the Administrative Procedure
Act." Maldonado Bautista, No. 5:25-CV-01873-SSS-BFM, Docket No. 94
¶ 2 (C.D. Cal. 2025).

Petitioner posits that he is a member of the Bond Eligible
Class certified in Maldonado Bautista and, as a beneficiary of
such, is entitled to a bond hearing in Puerto Rico. (Docket No. 1
at 10). Respondents counter that decisions issued by the Central
District of California in habeas proceedings cannot be extended to
this district.

The Court finds that although Petitioner falls within the technical definition of the Bond Eligible Class, this Court is not bound by the holding in Maldonado Bautista.

Pursuant to the federal habeas corpus statute, courts may only grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). Given this plain language, the Supreme Court has held "with respect to habeas petitions designed to relieve an individual from oppressive confinement, the traditional rule has always been that the Great Writ is issuable only in the district of confinement." Rumsfeld v. Padilla, 542 U.S. 426, 442 (2004) (internal quotations omitted). Moreover, the Supreme Court recently clarified that "[r]egardless of whether the detainees formally request release from confinement, because their claims for relief necessarily imply the invalidity of their confinement and removal...their claims fall within the core of the writ of habeas corpus and thus must be brought in habeas." Trump v. J. G. G., 604 U.S. 670, 672, (2025) (quotations omitted); see also Rumsfeld, 542 U.S. at 443 ("[F]or core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement").

Accordingly, the only district with jurisdiction over Petitioner's habeas corpus claim is the district of confinement, that is, the District of Puerto Rico, and not the Central District of California. The Court thus concludes that it is neither divested

of jurisdiction nor bound by Maldonado Bautista's ruling. *See* Alberto Rodriguez v. Jeffreys, No. 8:25CV714, 2025 WL 3754411, at *9 (D. Neb. Dec. 29, 2025).

Aside from asserting that he is a class member, Petitioner does not identify any basis for giving the holding in Maldonado Bautista preclusive effect here. *See* United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). Nevertheless, the Court notes that nonmutual offensive collateral estoppel does not apply against the government. *See* United States v. Mendoza, 464 U.S. 154, 162 (1984). In reaching this conclusion, the Supreme Court identified important reasons for this limitation. The government is not in the same position as a private litigant and given the "panoply of important public issues raised in governmental litigation[,] [it] may quite properly lead successive Administrations of the Executive Branch to take differing positions with respect to the resolution of a particular issue." Mendoza, 464 U.S. at 161. Moreover, "[a] rule allowing nonmutual collateral estoppel against the government in such cases would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue. Allowing only one final adjudication would deprive [the Supreme] Court of the benefit it receives from permitting several courts of appeals to

explore a difficult question before th[at] Court grants certiorari." Id. at 160. Additionally, other districts have rejected the argument that the Declaratory Judgment Act can be used to bind other district judges from review of hypothetical future habeas corpus proceedings involving litigants whose individual circumstances the courts have yet to consider. *See* Onosamba-Ohindo v. Searls, 678 F. Supp. 3d 364, 372 (W.D.N.Y. 2023).

For these reasons, the Court concludes that Petitioner is not warranted relief pursuant to Maldonado Bautista.

**D. Detention under Section 1225 or 1226**

Because Maldonado Bautista's judgment is not binding, the Court must address whether Section 1225 or 1226 of the INA applies to Petitioner's case. Petitioner asserts that Section 1225(b)(2)'s mandatory detention only applies to applicants for admission arriving at the border whereas Section 1226's discretionary detention applies to those already present in the United States that are subsequently arrested and detained. (Docket Nos. 1 at 9; 25 at 6). Petitioner further argues that under the INA, a noncitizen should only be subject to mandatory detention if they (1) are convicted of certain crimes; (2) are subject to expedited removal; or (3) have been previously ordered removed from the United States. (Docket No. 1 at 6) (citing 8 U.S.C. §§ 1226(c), 1225(b)(1) and 1231, respectively). He contends that he does not

fall within any of these three categories. Id. On the other hand, Respondents maintain that Petitioner is an applicant for admission per the terms of Section 1225(a)(1) and is thus ineligible for bond under Section 1226. (Docket No. 21 at 23-24).

When resolving a dispute over the meaning of a statute, courts "begin with the language of the statute itself" and must "first 'determine whether the language has a plain and unambiguous meaning with regard to the particular dispute in the case.'" In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 919 F.3d 121, 128 (1st Cir. 2019) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997)). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson, 519 U.S. at 341. Consequently, the Supreme Court has affirmed several times "that identical language may convey varying content when used in different statutes, sometimes even in different provisions of the same statute." Yates v. United States, 574 U.S. 528, 537 (2015) (collecting cases). "If the statute's language is plain, the sole function of the courts is to enforce it according to its terms. If, however, the language is not plain and unambiguous, [courts] then turn to other tools of statutory construction, such as legislative history." In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 919 F.3d at 128 (internal quotations and citations omitted).

In the case at bar, the Court finds that Section 1225(a)(1)'s definition of "applicants for admission" is unambiguous. As noted above, this section defines applicants for admission as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival[)]." 8 U.S.C. § 1225(a)(1). The INA also defines the terms "admitted" and "admission" with respect to a noncitizen as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). In other words, an applicant for admission is a noncitizen present in the United States who either: (1) has not been given lawful entry into the United States after inspection and authorization by an immigration officer; **or** (2) arrives in the United States, independent of whether they are at a point of entry. **Per the plain and unambiguous language of the statute, the term "applicant of admission" is <u>not</u> limited only to noncitizens seeking entry at a border given the distinction between those who are "present" and those who "arrive".** Rather, it includes all noncitizens in the United States who have not been inspected and granted admission, whether at a point of entry or elsewhere.

Petitioner necessarily falls within this definition, as he admittedly is: (1) not a citizen of the United States; (2) entered the United States without undergoing proper admission procedures (*i.e.*, without being inspected and admitted); and (3) present in

the United States. (Docket No. 1 at 4). As such, he is thus subject to the mandatory detention provisions of "applicants for admission" under Section 1225(b)(2). *See* <u>Chavez</u>, 801 F. Supp. 3d at 1140.

The Court's interpretation that "applicants for admission" also encompasses noncitizens present within the United States beyond ports of entry who have not been admitted and that they are subject to mandatory detention is further supported by the INA's accompanying regulations. 8 C.F.R. § 235.3(b)(1)(ii) provides that:

> An alien who was not inspected and admitted or paroled into the United States but who establishes that he or she has been continuously physically present in the United States for the 2-year period immediately prior to the date of determination of inadmissibility shall be detained in accordance with section 235(b)(2) [(8 U.S.C. § 1225(b)(2)] of the Act for a proceeding under section 240 of the Act.

Said 1997 regulatory provision evinces that the BIA's interpretation in <u>Matter of YAJURE HURTADO</u> and adopted today is not a recent nor a new development. *See* <u>Buenrostro-Mendez</u>, 2026 WL 323330, at *8. Nevertheless, it is ultimately the Court's duty to come to its own conclusion as to the meaning of the statute. <u>Loper Bright Enterprises v. Raimondo</u>, 6043 U.S. 369, 413 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority").

Contrary to Petitioner's allegations, this interpretation
does not render Section 1226 redundant. (Docket No. 21 at 6).
"Because § 1226 is not limited to applicants for admission, it
also covers numerous grounds of deportability, including for
admitted aliens who overstay or violate the terms of their visas,
engage in conduct that renders them removable, or were improperly
admitted." Buenrostro-Mendez, 2026 WL 323330, at *2. Conversely,
if Section 1226(a) was applied to Petitioner and others similarly
situated, it would nullify the plain meaning of Section
1225(a)(1)'s definition of applicant for admission by exempting
non-citizens who have not been admitted into the United States
from Section 1225(b)(2)'s mandatory detention provision. See
Republic of Sudan v. Harrison, 587 U.S. 1, 12 (2019) (Courts should
be "hesitant to adopt an interpretation of a congressional
enactment which renders superfluous another portion of that same
law.").

By the same token, this ruling does not contradict the Supreme
Court's findings in Jennings v. Rodriguez, 583 U.S. 281 (2018).
Therein, the Supreme Court similarly concluded that an "alien who
arrives in the United States or **is present in this country but has
not been admitted**, is treated as an applicant for admission.
**Applicants for admission must be inspected by immigration officers
to ensure that they may be admitted into the country** consistent
with U.S. immigration law." Jennings, 583 U.S. at 287 (emphasis

added). Said applicants for admission may fall into different categories but all are subject to detention absent "urgent humanitarian reasons or significant public benefit." Id. at 287-288. The Supreme Court notes that "[e]ven once inside the United States, aliens do not have an absolute right to remain here. For example, an alien present in the country may still be removed if he or she falls within one or more classes of deportable aliens." Id. at 288 (cleaned up). In other words, even if **admitted**, noncitizens may be subject to removal under the INA. The Jennings Court proceeds to explain that "Section 1226 generally governs the process of arresting and detaining that group of aliens pending their removal." Id. Therefore, per Jennings, Section 1226 applies noncitizens inspected and authorized to lawfully enter the United States. Nothing in Jennings limits Section 1225(b)(2)'s application to individuals at the border or other points of entry. See also Alberto Rodriguez, 2025 WL 3754411, at *12 (finding that there may be overlap between Sections 1225 and 1226 because aliens present in the United States who have not been admitted defined in Section 1225(a)(1) and to whom Section 1225(b)(2) applies "include—as a matter of plain language—the same group of aliens to whom the Supreme Court [in Jennings] stated § 1226(a) applies, that is 'aliens already present in the United States'").

Lastly, the Court notes Respondents concede that Section 1225(b)(2) is not a license for indefinite detention. See (Docket

No. 21 at 21) (recognizing that a brief period of detention for removal proceedings amounting to less than three months does not violate the constitution). Likewise, nothing in this opinion should be read as authorization to do so.

## V. CONCLUSION

According to the evidence before the Court, and save for his illegal entry into the country, Petitioner appears to be generally law-abiding and is a husband and father of United States citizens. If the decision could be based purely on sympathy, a different result might be warranted. And based on social policy and other considerations, reasonable minds might make arguments against or in favor of mandatory detention of noncitizens present in the United States without having been admitted. But the Court's duty is "to interpret the law not to re-write it." In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 919 F.3d at 132. This Court is of the view that the plain meaning of Section 1225(a)(1) and Section 1225(b)(2) compels Petitioner's detention and renders him ineligible for a bond hearing under Section 1226. Considering the foregoing, Petitioner's *Petition for Writ of Habeas Corpus* at Docket No. 1 is hereby **DENIED.**

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 17th day of February 2026.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge